UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

SHATARA MARIE JAVED and HUSSAIN SYED JAVED,

Debtors.

Case No. 26-10785-13

---

**DECISION**

Shatara Marie Javed and Hussain Syed Javed ("Debtors") filed this Chapter 13 case on April 10, 2026. It is Debtors' third bankruptcy case since November 13, 2024.

Debtors appear pro se in this case. It was dismissed on July 30, 2026, pursuant to 11 U.S.C. § 1307(c).

On August 13, 2026, a Motion Confirming Absence of Stay and, Alternatively, Motion for Relief from Stay and Abandonment was filed by Summit Credit Union ("Summit"). A hearing on Debtors' objection to this motion was held on August 28, 2026. The Court granted the motion on that day.

A Motion to Vacate Order of Dismissal was filed. On August 28, 2026, the Court held a hearing and denied Debtors' Motion to Vacate the Order of Dismissal.

Debtors filed a Notice of Appeal on September 3, 2026, appealing the Order granting relief from stay and abandonment and the denial of the motion to vacate the dismissal.

Debtors filed an Emergency Motion for Injunctive and Status-Quo Relief Concerning Residence Pending Appeal of Document 117 (referred to in this decision as "Motion for Stay Pending Appeal").[1] Summit filed an objection to the Motion for Stay Pending Appeal. A hearing on the Motion for Stay Pending Appeal was held on September 28, 2026.

## STATEMENT OF FACTS

Prior Cases

The Debtors filed two prior Chapter 13 cases. The Court reviewed and considered those facts in this case, the Motion to Dismiss, and Motion for Relief from Stay. In summary, the disposition of the prior cases was as follows:

- Case No. 24-12307, filed November 13, 2024, and dismissed September 18, 2025
    - The plan was confirmed February 10, 2025, and required monthly payments of $6,399.00.
    - A motion to dismiss the case for failure to make plan payments was filed on July 22, 2025. Debtors objected and stated that a new budget and amended plan would be filed.
    - On August 26, 2025, the Court ordered that Debtors either bring payments current by September 16, 2025, or file an amended plan and budget.
    - Debtors failed to cure the default or file an amended plan and budget.
    - The case was dismissed on September 18, 2026.

[1] Dkt. No. 129. The title of this document refers to Dkt. No. 117. That is the Proceeding Memo Order denying the Motion to Vacate Dismissal.

- Case No. 25-12403, filed October 31, 2025, and dismissed on March 18, 2026.

  - Debtors failed to pay the first installment as required under section 1326(a)(1), and a motion to dismiss was filed by the Chapter 13 Trustee on December 2, 2025.

  - The plan proposed a payment of $100 in month one followed by 59 payments of $6,285.00.

  - Debtors made the first payment on December 5, 2025.

  - There were objections to confirmation of the plan and a hearing was held on January 20, 2026.

  - Debtors were again in default on plan payments, and they were ordered to bring payments current by February 3, 2026. If payments were brought current, Debtors were further ordered to file amended Schedules A/B, I, and J, amend the means test, amend the Statement of Financial Affairs, address a tax issue, and file an amended plan and budget by February 19, 2026.

  - Various motions for relief from stay were filed including a motion by Summit.[2]

  - Debtors objected to relief from stay, claiming they were seeking alternative counsel and requesting more time to retain such representation and to comply with the Court orders.

  - The Court granted an extension to March 16, 2026.

  - Debtors failed to cure the payment defaults or to file any of the required amended documents and pleadings.

  - The Court entered the Order of Dismissal on March 18, 2026.

  - On March 23, 2026, Debtors filed a motion for reconsideration of the dismissal. On March 27, Debtors filed a motion requesting an expedited hearing. In that motion, Debtors stated that a vehicle had been repossessed and it was “our only means of transportation for our three children.”[3]

---

[2] Summit Credit Union’s Mot. for Relief from Stay and Abandonment, Dkt. No. 57.
[3] Mot. to Expedite Hrg., Dkt. No. 64.

- On March 27, 2026, the Court considered and granted Summit's Motion for Relief from Stay and Abandonment.[4]

- A hearing was held on the Debtors' Motion for Reconsideration on April 20, 2026. The Motion was denied.

- The total payments made by Debtors to the Trustee were $200.

- Those funds were returned to the Debtors.

Current Case

Debtors filed this case on April 10, 2026. After Debtors failed to file a plan meeting the requirements of the Code and further finding no cause had been shown as to why the case should not be dismissed, the Court dismissed this case on July 30, 2026.[5]

On August 10, 2026, Debtors filed a Motion to Vacate the Dismissal. Summit filed a Motion Confirming Absence of Stay and, Alternatively, Motion for Relief from Stay and Abandonment on August 13, 2026.

Hearings on both of these motions were held on August 28, 2026. The parties presented arguments. The Court rendered findings from the bench as oral rulings and issued two orders. One denied the Motion to Vacate. The other granted relief from stay to Summit.

Debtors filed a Notice of Appeal. Official Bankruptcy Form 417A is the document appellants must file to formally appeal an Order or Judgment under Federal Rule of Bankruptcy Procedure 9009. The Notice of Appeal must conform substantially to the official Rule. Fed. R. Bankr. P. 8003(a)(3). The

[4] Order for Relief from Stay and Abandonment, Dkt. No. 63.
[5] Order of Dismissal, Dkt. No. 88.

Notice of Appeal in this case identifies both orders as the Orders being appealed.[6]

Part 3 of the Notice of Appeal must "[l]ist the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys." The Notice in this case identifies Summit and the Chapter 13 Trustee as "the other parties to the appeal."[7] It does not list the names, addresses, or other detail of any other party, including any mortgage lender or other secured creditor.

While no Motion for Injunctive and Status-Quo Relief is identified or labeled this way under the Rules, the Court will consider this a Motion for Stay Pending Appeal. The Motion seeks "temporary relief preventing any foreclosure sale, sheriff's sale, transfer following such a sale, or other irreversible disposition of their residence."[8] The Motion does not seek a stay on Summit's action involving Debtors' vehicles.[9] Debtors also filed a Motion to Expedite the Hearing on the Motion for Stay Pending Appeal.[10] The Motion to Expedite does request a stay on Summit's collateral.

Based on the Claims Register, Wilmington Savings Fund ("WSF") is a secured creditor. It filed a proof of claim and a request for notice and service of all filings. The claim is secured by the Debtors' residence. WSF does not receive electronic service in this case. WSF is not named as a party to the appeal.

---

[6] Notice of Appeal, Dkt. No. 126.
[7] *See id.* at 1, pt. 3.
[8] Mot. for Stay Pending Appeal, Dkt. No. 129 at 1, ¶ 2.
[9] *See id.*
[10] Mot. to Expedite Hearing, Dkt. No. 131.

Debtors filed a Certificate of Service for both the Notice of Appeal and the Motion for Stay Pending Appeal. The Certificate for the Notice of Appeal is missing a full date. Both Certificates claim Debtors served a true and correct copy . . . on the Chapter 13 Trustee; Summit Credit Union through counsel Kimberly P. Sebranek; each mortgage holder/servicer or other secured creditor whose rights concerning the residence are affected by the requested home-related relief; the United States Trustee; and all other parties entitled to notice, using the Court's current official service matrix, and that the method of service was hand delivery.[11]

Neither Certificate names WSF or includes details about WSF's service. The proof of claim for WSF lists an address in Salt Lake City, Utah, for service of notices.[12] The record also does not contain any other evidence that WSF received notice of either filing.

## DISCUSSION

A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. The Court has the authority to consider a motion for stay pending appeal under Federal Rule of Bankruptcy Procedure 8007 and 28 U.S.C. § 157(g).

[11] Certs. of Service, Dkt. No. 126 at 5; Dkt. No. 129 at 3.
[12] Wilmington Savings Fund, Claim No. 47-1.

B. <u>WSF is not a party to the appeal and did not receive notice of the appeal or the Motion for Stay Pending Appeal</u>.

The Motion seeks a stay concerning any action related to the residence, including any action to foreclose, any sheriff sale, or any transfer pursuant to a sheriff sale. If the Court were to grant the Motion for Stay Pending Appeal, WSF's right to pursue state court action against the Debtors' residence would be materially affected during the appeal process. It is, therefore, fundamental that WSF be named as a party to any appeal and received notice of the appeal and the Motion for Stay Pending Appeal. WSF received neither, and it was not identified as a party to the appeal.

C. <u>The record does not establish that WSF received adequate notice of the appeal</u>.

Federal Rule of Bankruptcy Procedure Rule 8002(a)(1) provides that a Notice of Appeal must be filed "within 14 days after the judgment, order, or decree to be appealed is entered." Rule 8003(c) requires the bankruptcy clerk to serve a Notice of Appeal "by sending a copy to counsel of record for each party to the appeal." Only parties identified by an appellant as a party to the appeal receive notice from the bankruptcy clerk.

The appeal involves two Orders entered by the Court on August 28, 2026. The 14-day period for filing a Notice of Appeal on those Orders expired on September 11, 2026. Debtors' Notice of Appeal identified the parties as Summit Credit Union and the Chapter 13 Trustee. It did not include WSF in the list of "other parties to the appeal."

While an attachment labeled "Notice of Appeal and Statement of Election" contains the following:

> **Other parties**: Summit Credit Union, through counsel Kimberly P. Sebranek; Chapter 13 Trustee Mark Herring; and other parties shown on the Court's service matrix.

it does not list the "other parties" nor is there proof of any service. WSF was not identified as a party to the appeal. The Court sends notice to the parties to the appeal and the U.S. Trustee. In other words, it sends notice to those identified in Part 3 of Form 417A. The Court did not send notice to all creditors. It is not required to do so. WSF was not served with the Notice of Appeal by the bankruptcy clerk or by the Debtors.

Outside of the requirements discussed above, the Federal Rules of Bankruptcy Procedure do not directly address proof of service requirements for a Notice of Appeal. *See* Rule 8003(c). Proof of service should contain sufficient facts to confirm that valid service has been accomplished on all parties entitled to notice such as the specific place where the service occurred, the date and method of service, and the recipient's name. *See* BAICKER-MCKEE & JANSSEN, FEDERAL RULES OF CIVIL PROCEDURE HANDBOOK 267 (Thomas Reuters 2026). This requires that the identity (name) of each party be provided by the Appellant.

Debtors filed a Certificate of Service with the Notice of Appeal on September 3, 2026. The Certificate claims that Debtors, independent of the bankruptcy clerk, served the Notice of Appeal "on August __ 2026." The space identifying the specific date of service is blank. The Certificate adds that Debtors hand-delivered the Notice to the "Chapter 13 Trustee; the United

States Trustee; the mortgage holder/servicer and each secured creditor whose rights concerning the residence are affected; and all other parties entitled to notice using the Court's current official service information."

But there are issues with this. First, the Chapter 13 Trustee, the U.S. Trustee, and Summit received electronic notice, not hand-delivered notice, of the Notice of Appeal. Second, the Certificate does not identify WSF as a recipient. Third, it does not identify when, where, or upon whom service to WSF was allegedly made. Debtors have not provided "sufficient facts to confirm that valid service has been accomplished." *See Williams v. Martinez*, 192 F. Supp. 3d 1, 4 (D.D.C. 2016).

WSF did not receive the Notice of Appeal through the process outlined in Fed. R. Bankr. P. 8002(a) and 8003(c). And the record does not sufficiently establish that the Debtors independently served WSF with it. Failure to identify WSF as an appellee or to serve the Notice of Appeal on it require denial of the Motion with respect to WSF.

D. <u>The record also does not establish that WSF was properly served with the Motion for Stay Pending Appeal</u>.

Federal Bankruptcy Rule 9014 states that in contested matters motions "must be served . . . in the manner for serving a summons and complaint provided by Rule 7004." Rule 7004 in turn incorporates the applicable service requirements of Federal Rule of Civil Procedure 4. Federal Rule of Civil Procedure 4(l) provides that: "(1) Unless service is waived, proof of service must be made to the court . . . by the server's affidavit." The burden of establishing proper service rests with the party seeking relief. BAICKER-MCKEE & JANSSEN,

FEDERAL RULES OF CIVIL PROCEDURE HANDBOOK 267 (Thomas Reuters 2026). The proof of service should contain sufficient facts to confirm that valid service occurred, including facts identifying where, or the person upon whom, service was made.

Here, Debtors seek an injunction against foreclosure, sale, or other action on the mortgage pending appeal. As discussed above, granting that injunction would directly affect WSF's rights as the mortgage lender. So before the injunction can be granted, WSF must receive proper notice of the Motion. It did not. It must also be a party to the appeal, but it is not.

The record does not establish that WSF was properly served. Debtors did not provide an affidavit attesting to serving WSF, and the Debtors' Certificate of Service is too vague to establish compliance with Rule 7004(l). The Certificate makes a generic reference to a "mortgage holder" and to "each secured creditor whose rights concerning the residence are affected." It does not identify WSF by name or otherwise establish that WSF specifically received service. It also does not identify the location where or person upon whom service was made. This further supports denial of the Motion as to WSF.

E. The considerations for a stay under Rule 8 are not satisfied.

Debtors appealed two Court Orders: 1) an order denying reconsideration of dismissal, and 2) an order granting relief from stay to Summit. Debtors named Summit as a party to the appeal and notice of the request for a stay was provided to them. To the contrary, WSF was neither named a party to any appeal nor provided notice of the request for a stay. Even so, the Court will

address the considerations under Rule 8 of the Federal Rules of Appellate Practice with regard to both Summit and WSF.

A stay pending appeal is an exceptional form of relief and requires a considerable showing from the movant. *In re Sternitzky*, 638 B.R. 770, 776 (Bankr. W.D. Wis. 2022). The Seventh Circuit has recognized four factors that courts should consider in determining whether to grant a stay pending appeal: (1) the likelihood of success on the merits of the appeal; (2) whether the party seeking a stay will suffer irreparable injury in its absence; (3) whether other parties would be substantially harmed by a stay; and (4) the public interest at stake. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The party seeking the stay bears a heavy burden of justifying the relief sought and must make a strong and substantial threshold showing of likelihood of success on the merits of the appeal. *Id.* at 1300-01.

*1. Likelihood of Success*

Debtors presented no argument either in their filings or at the hearing on the Motion addressing the likelihood of success. Nor was there any response from them about whether WSF was a party to any appeal or how it had been served "by hand delivery" of the Motion as stated in the Certificate of Service they filed.

Bankruptcy Procedure Rule 9024 generally makes Federal Rule of Civil Procedure 60 applicable to motions for relief from a judgment or order in

bankruptcy cases.[13] Debtor's Motion to Vacate Dismissal did not establish a basis for relief under Rule 59(e) or Rule 60(b).

The circumstances on which the Debtors relied were known before dismissal, and they had repeated opportunities to address the deficiencies the Court's order identified. The vehicle fire after a prolonged coolant issue, alleged to have exacerbated financial hardship and post-dismissal repossession, did not constitute extraordinary circumstances that warranted vacating the dismissal or denying the relief from stay. Neither was there any other exceptional circumstance identified that would meet the Rule 60(b)(6) catchall. No newly discovered evidence was presented. No manifest error of fact or law was raised. None of the factors considered under the Rules was present. The Debtors have now had three Chapter 13 cases dismissed since September 2025. In each case they were given opportunities to cure their cases' deficiencies and failed to do so.

With respect to the Order granting relief from stay on the Summit collateral, Debtors argued that two of their cars—a van and a Jaguar—were unavailable due to repairs. The uninsured Range Rover was not available because it was destroyed in a fire. Debtors had terminated or suspended insurance on it while it was at a mechanic and did not reinstate any insurance after picking it up and driving it either because they had not had it long or,

[13] Fed. R. Bankr. P. 9024.

because although they acknowledged they had to insure it, they decided it wasn't necessary because Summit had put in place some insurance.

Summit was not adequately protected, and the Code supported the grant of relief from stay as well as a finding that upon dismissal the stay dissolved.

*2. Harm to Debtors*

At the time of the filing of the current case, the prepetition arrearage on the mortgage was more than $75,000. While Debtors say they made post-petition payments, there were no payments on the arrears.

There is not currently a judgment of foreclosure against Debtors' residence. Under Wisconsin law, Debtors could remain in the house during any action in state court leading to a judgment of foreclosure. Further, they could stay after a foreclosure judgment for the entire redemption period—from six to twelve months whether or not they made a single payment to the lender.

No payments were made to Summit in the current or immediately preceding case. At least one of the pieces of collateral—the Corvette—is not in Debtors' possession or use. Instead, they say they are renting it out through Turo. They assume it is insured through the rental. They do not immediately know who has possession of the car. But they say they need a stay so that they can continue to have it rented out to generate income for Mr. Javed's business. According to Schedule I, his business generates $2,500 per month. With the possible exception of the Dodge Charger, there is no equity in any of the vehicles. The Range Rover was destroyed in a fire. Debtors terminated the

insurance on the vehicle they were required to maintain under both the contract with Summit and the Code.

Excluding the Summit collateral, the Debtors own two other vehicles—a Jaguar and a Ford Mustang. Each could provide a means of transportation or, if they choose, be something used in Mr. Javed's rental business. While eliminating the stay on Summit collateral may be inconvenient for the Debtors, that is not sufficient. The Court must also weigh any harm to Debtors against the harm to other parties.

*3. Substantial Harm to Others*

Debtors failed to demonstrate substantial performance in any of the three cases. The coolant warning light had been on for over a month before the fire, yet Debtors continued to operate the vehicle. They permitted insurance to lapse but continued to operate it. They didn't make timely or full plan payments and provided no adequate protection payments to Summit.

While in the first case they did make approximately $30,000 in payments before failing to make continued payments, in the second case they made only $200 in payments despite the plan and estimated available monthly income to be paid of more than $5,400.

Harm to Summit—and other creditors—is a substantial risk. The cavalier attitude of Debtors toward maintaining insurance, addressing known maintenance issues with vehicles, making payments to creditors or the Chapter 13 Trustee, or protecting the interests of the creditors and their collateral all highlight the substantial risk to creditors. Debtors identified one

event after another—the death of a family member, responsibilities under a power of attorney, one or more claimed hospitalizations, and the stress of the car fire—as excuses for failing to make the substantial monthly payments the record and their proposed plan said should be made.

Never was there an argument that the funds were not present (at least in large part). While those circumstances were unfortunate, many of the items were within the control of one or the other of the two Debtors.

Failure to provide proof of insurance was cause for relief from stay. Failure to make post-petition adequate protection payments was cause for relief from stay. The collateral continues to diminish in value. "Renting" out vehicles through a third party, not knowing who is in possession of the vehicles, failing to make payments, and assuming that the lienholders are protected and there is insurance, all demonstrate the real probability of substantial harm.

The potential harm to creditors outweighs the possible harm to Debtors.

*4. Public Policy*

Public policy weighs against a stay. The Notice of Appeal does not identify WSF as a party. WSF did not receive notice of the Motion for Stay Pending Appeal. Parties to an appeal are entitled to notice of the appeal and of any request for a stay pending appeal. To grant the relief requested would deny this interest.

One of the public policies underlying the Code is equality of distribution and treatment within a reasonable time frame. *Sternitzky*, 638 B.R. at 781.

Granting a stay would not advance this policy. There have been three bankruptcies dismissed within a one-year period. During the year between the dismissals, no payments were made through the trustee to creditors.

Debtors had every opportunity to cure defaults in the first case and proceed. They did not. They also had ample time and every chance to propose a feasible and confirmable plan and to make payments in the second and third cases. They failed and refused to do so.

No public policy supports granting the stay requested.

## **CONCLUSION**

Based on the foregoing, the Motion for Stay Pending Appeal is denied as to both Wilmington Savings Fund and Summit Credit Union.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: October 2, 2026

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge